IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ARTEMIO ARMAS and EMA ARMAS, §
and all others similarly situated under §
29 U.S.C. § 216(b), §
§
Plaintiffs, §
§ Civil Action No. 3:17-CV-2383-D
VS. §
§
ST. AUGUSTINE OLD ROMAN §
CATHOLIC CHURCH, et al., §
§
Defendants. §

MEMORANDUM OPINION
AND ORDER

In this collective action, plaintiffs Artemio Armas ("Artemio") and Ema Armas

("Ema") sue defendants St. Augustine Catholic Church and School ("St. Augustine"), John

Parnell ("Parnell"), and St. Augustine Old Roman Catholic Church, a Parish of the Old

Roman Catholic Church in North America ("Old Roman"), under the Fair Labor Standards

Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and under Texas law. In separate motions,

Old Roman, and Parnell and St. Augustine, move for summary judgment. Although the

motions present several close questions, for the reasons that follow, the court grants in part

and denies in part the motion filed by Parnell and St. Augustine, and it grants the motion filed

by Old Roman and dismisses with prejudice plaintiffs' federal-law claims against Old Roman

and dismisses without prejudice plaintiffs' state-law claims against Old Roman by judgment

filed today.

I

St. Augustine is a small church located on a residential lot in Fort Worth, Texas, where Parnell has served as pastor since 1991.[1] St. Augustine's facilities include a chapel, church office, Parnell's office, storage space/apartment, and a yard. Although the parishioners of St. Augustine share many doctrinal beliefs with the Roman Catholic Church, defendants maintain that St. Augustine operates autonomously and independently from the Roman Catholic Church, sustaining its operations by relying on Sunday mass collections and volunteer work.

In addition to conducting weekly masses in English and Spanish, St. Augustine provides a place for the congregation to celebrate weddings and quinceañeras and to hold funeral services. The church also operates a home-school program for high school students that offers the equivalent of a high school diploma. According to plaintiffs, beginning in 2008, Parnell manufactured cigars at St. Augustine using tobacco imported from the Dominican Republic.

In 2003 Artemio and his wife Ema met Parnell and became active members of St. Augustine. Defendants maintain that Artemio and Ema volunteered at the church on "parish work days," during which church members volunteered to perform tasks such as vacuuming,

---

[1]In deciding defendants' motions for summary judgment, the court views the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

cleaning the bathrooms, cleaning the yard, and emptying the trash.[2]

Artemio and Ema contend that they provided general maintenance, janitorial, and housekeeping services at St. Augustine from 2008 through August 31, 2016, and that in September 2016 Artemio assisted Parnell and St. Augustine in transporting goods from California to Texas. Prior to January 2, 2016 Parnell's then-wife Caroline Parnell allegedly paid Artemio and Ema for their work at St. Augustine. According to Artemio and Ema, however, beginning on January 2, 2016, and continuing through August 31, 2016, they worked an average of 35 hours per week but were not paid for their work, despite Parnell's having informed Artemio that he would be paid $10.00 per hour and that Ema would be paid $9.00 per hour for their work in 2016.

In September 2016 Artemio asked Parnell to be paid for the work that he and Ema had performed at St. Augustine that year. According to plaintiffs, Parnell responded to this request by threatening and physically assaulting Artemio.

Artemio and Ema then filed this lawsuit against St. Augustine, Parnell, and Old Roman. In their second amended complaint, they sue Parnell, St. Augustine, and Old Roman under the FLSA for unpaid minimum wages and retaliation, and under Texas law on claims for breach of contract, assault, quantum meruit, and promissory estoppel. Parnell and St. Augustine, and Old Roman, separately move for summary judgment. Plaintiffs oppose both

_____

[2]There is also evidence that Artemio and Ema signed a Volunteer Waiver Form that stated, *inter alia*: "I understand that my work is voluntary and I will not be paid." Ds. App. 53-54. Defendants do not contend that Artemio and Ema could waive their rights under the FLSA.

motions.  The court has heard oral argument.[3]

## II

When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovants' claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the nonmovants must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovants' favor.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The nonmovants' failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if the nonmovants fail to meet this burden.  *Little*, 37 F.3d at 1076.

---

[3]At the request and appointment of the magistrate judge, defendants' attorneys are representing them *pro bono*.  The court convened oral argument under an initiative of this court that enables younger lawyers to present oral argument when they have performed substantial work on the motion briefing.  The court expresses its appreciation to defendants' counsel for both the quality of their briefing and of their oral argument.  Plaintiffs' counsel likewise exhibited professionalism during his argument.

III

Parnell and St. Augustine move for summary judgment on plaintiffs' FLSA minimum wage claim on the ground that neither Artemio nor Ema was a covered employee under the FLSA.

A

The FLSA guarantees certain minimum wages for employees "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a).[4] To establish FLSA coverage, plaintiffs must show that they (1) personally engaged in commerce or the production of goods for commerce (individual coverage) or (2) were employed by an enterprise engaged in such activity (enterprise coverage). *See Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (quoting 29 U.S.C. § 207(a)(1)). "*Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Id.*

B

The court considers first whether plaintiffs have presented sufficient evidence for a reasonable jury to find that they are covered under the FLSA based on individual coverage.

---

[4]The statute provides, in pertinent part: "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates . . . (C) $7.25 an hour[.]" 29 U.S.C. § 206(a).

1

Because the FLSA does not define what it means for an employee to be "engaged in interstate commerce," the Fifth Circuit has adopted a "practical test," which asks "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc*., 474 F.3d 828, 829 (5th Cir. 2007) (per curiam) (quoting *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324 (1960)). "[A]ny regular contact with commerce, no matter how small, will result in coverage." *Id.* (alteration in original) (quoting *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1124 (5th Cir. 1979)). The employee's work, however, must be "entwined with the continuous stream of interstate commerce." *Marshall*, 603 F.2d at 1125 (citation omitted). "It is therefore not sufficient, for purposes of the 'engaged in commerce' clause of the individual coverage provision, that an employee's work merely 'affects' interstate commerce in some way." *Mendoza v. Detail Sols., LLC*, 911 F.Supp.2d 433, 439 (N.D. Tex. 2012) (Fish, J.) (citing *Wirtz v. Wohl Shoe Co.*, 382 F.2d 848, 850 (5th Cir. 1967)).

Parnell and St. Augustine contend that plaintiffs were not engaged in interstate commerce when they allegedly provided handyman and janitorial services at St. Augustine, and, instead, that their work was "isolated local activity." Ds. Br. 8. Plaintiffs respond that much of their work was custodial in nature; Parnell manufactured cigars on the property owned and operated by St. Augustine using tobacco imported from the Dominican Republic; Artemio "witnessed bishops with briefcases full of cigars at St. Augustine," Ps. Br. 16;

- 6 -

Parnell told Artemio that he "earned a lot of money selling [the cigars]," *id.* at 17 (alteration in original); and Artemio testified that a number of the bishops involved with St. Augustine were from locations outside the state of Texas.

Based on plaintiffs' summary judgment evidence, a reasonable jury could not find that the work Artemio and Ema performed at St. Augustine was so "directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Sobrinio*, 474 F.3d at 829. At most, plaintiffs have shown that Parnell rolled cigars on church property using tobacco from the Dominican Republic. But they have not adduced sufficient summary judgment evidence for a reasonable jury to find that Parnell ever sold the cigars he rolled or that St. Augustine profited in any way from Parnell's alleged cigar-rolling operation. In other words, plaintiffs have failed to create a fact issue on whether the cigars allegedly manufactured at St. Augustine ever entered the stream of commerce. Plaintiffs' bare allegation that Parnell manufactured and sold cigars on church property is insufficient, without more, to establish that plaintiffs were "engaged in commerce," as is required to establish individual coverage. In fact, at oral argument, plaintiffs' counsel acknowledged that plaintiffs' argument that they could establish individual FLSA coverage based on Parnell's alleged cigar manufacturing was "weak."

2

Plaintiffs' allegation that, in September 2016, Artemio drove a truck to California to transport goods back to Texas is likewise insufficient to enable a reasonable jury to find that

plaintiffs were "engaged in commerce."  "A key factor in determining if a plaintiff engaged

in commerce for purposes of individual coverage under the FLSA is whether such activities

were a 'regular and recurrent' part of the plaintiff's employment duties." *Tran v. Thai*, 2010

WL 5232944, at *3 (S.D. Tex. Dec. 16, 2010) (citing 29 C.F.R. § 776.10(b)); *see also*

*Sobrinio*, 474 F.3d at 829 ("[A]ny *regular* contact with commerce, no matter how small, will

result in coverage," (alteration in original) (emphasis added) (quoting *Marhall*, 63 F.2d at

1124)).  In other words,

> for an employee to be "engaged in commerce" under the FLSA,
> he must be "directly participating in the actual movement of
> persons or things in interstate commerce by (i) working for an
> instrumentality of interstate commerce, e.g., transportation or
> communication industry employees, or (ii) by regularly using
> the instrumentalities of interstate commerce in his work, e.g.,
> *regular and recurrent* use of interstate telephone, telegraph,
> mails, or travel."

*Tran*, 2010 WL 5232944, at *3 (emphasis added) (quoting *Thorne v. All Restoration Servs.,*

*Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006)).  Assuming *arguendo* that Artemio actually

assisted Parnell in transporting goods from California to Texas in September 2016,[5] plaintiffs

have adduced no evidence that would enable a reasonable jury to find that this was anything

more than an isolated, one-time occurrence.  This activity, even if it occurred, is insufficient

to permit a reasonable jury to find that plaintiffs were "engaged in commerce."

---

[5]Defendants contend that the evidence contradicts plaintiffs' allegation that Artemio
traveled to California in *September* 2016.

Finally, the court considers whether plaintiffs have introduced sufficient evidence for a reasonable jury to find individual coverage based on the domestic services that plaintiffs allegedly performed for Parnell and St. Augustine.

Under the FLSA, "the employment of persons in domestic service in households affects commerce." 29 U.S.C. § 202(a). "The term domestic service employment means services of a household nature performed by an employee in or about a private home (permanent or temporary)" and includes "services performed by employees such as . . . maids, housekeepers, . . . janitors, . . . caretakers, handymen, [and] gardeners." 29 C.F.R. § 552.3.

Defendants do not appear to dispute that the services Artemio and Ema provided were of a "household nature." Instead, they maintain that plaintiffs cannot establish individual coverage because the domestic services they provided were not performed in a private home. In response, plaintiffs point to evidence that one of the buildings on the church property, Building B, was Parnell's residence and personal office during 2016, and they posit that this evidence supports a finding that plaintiffs' domestic service tasks, "such as cleaning the residence and doing Parnell's laundry," were performed at a private residence and fall within the domestic service individual coverage arm of the FLSA. Ps. Br. 19.

Assuming *arguendo* that Building B was Parnell's personal residence, as plaintiffs contend, plaintiffs have failed to establish individual coverage because they fail to cite any evidence that would enable a reasonable jury to find that they performed domestic services

*in Parnell's personal residence* as opposed to the other buildings and structures located on the church property. The mere fact that Parnell maintained a private residence on the church property does not convert plaintiffs' work in the public areas of the church property into "domestic service in [a] household[ ]." 29 U.S.C. § 202(a). Without evidence that Artemio or Ema cleaned, repaired, or otherwise performed domestic services in Parnell's private residence, plaintiffs cannot establish individual coverage under the FLSA.

Accordingly, the court grants Parnell and St. Augustine's motion for summary judgment to the extent it is based on plaintiffs' failure to create a fact issue with respect to individual coverage under the FLSA.

C

Having concluded that plaintiffs have failed to introduce sufficient evidence for a reasonable jury to find that they are covered under the FLSA based on individual coverage, the court now turns to the question whether plaintiffs are covered based on enterprise coverage.

1

Unlike individual coverage, Congress *did* define what it means under the FLSA to be an "enterprise" and to be an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as an "enterprise" that:

(A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

(B) is engaged in the operation of . . . [an] elementary or secondary school . . . (regardless of whether or not such . . . school is public or private or operated for profit or not for profit); or

(C) is an activity of a public agency.

29 U.S.C. § 203(s)(1). Plaintiffs conceded during oral argument that they cannot satisfy the requirements of 29 U.S.C. § 203(s)(1)(A). They attempt instead to establish FLSA enterprise coverage under § 203(s)(1)(B) on the basis that Parnell and St. Augustine operated a secondary school during the relevant time period.

2

In their reply brief, defendants contend that the St. Augustine school is not an enterprise because plaintiffs have failed to present any evidence that defendants' activities compete with ordinary commercial enterprises to serve the general public. They maintain that the St. Augustine school is factually distinguishable from the school found to be an "enterprise" in *Dole v. Shenandoah Baptist Church*, 899 F.2d 1389 (4th Cir. 1990), because

[d]uring the relevant period, St. Augustine only offered a home school program for a small number of adult students obtaining a high school diploma on a self-paced program. St. Augustine did not employ any teachers or support staff, and tuition was entirely donation-based. Unlike in *Dole*, there is no evidence

that St. Augustine operates a school that competes with other similar schools in the marketplace.

Ds. Reply 12 (citations omitted).[6]  Although the question is a close one, considering the narrow ground on which defendants seek summary judgment regarding enterprise coverage and the absence of precedential opinions, the court declines to grant summary judgment eliminating the possibility of enterprise coverage based on Parnell and St. Augustine's operation of a secondary school.

Under the FLSA, an "enterprise" is defined as "the related activities performed . . . by any person or persons for a common business purpose[.]"  29 U.S.C. § 203(r).  Non-profit institutions such as St. Augustine are generally exempt from FLSA coverage except to the extent that they engage in commercial activity performed for a "business purpose."  *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 297 (1985); *see also Locke v. St. Augustine's Episcopal Church*, 690 F.Supp.2d 77, 87 (E.D.N.Y. 2010) ("An organization that performs religious, educational, or charitable activities does not perform these activities

_____

[6]This argument was raised for the first time in defendants' reply brief.  Although the court almost always declines to consider such arguments, *see, e.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F.Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.))), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008), it will do so here because plaintiffs had the opportunity to address the argument during oral argument.

Additionally, defendants filed reply appendixes in support of their summary judgment motions without leave of court, in violation of *Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 104 (N.D. Tex. 2001) (Fitzwater, J.) (holding that party may not file summary judgment reply appendix without first obtaining leave of court).  Plaintiffs objected to the appendixes on this ground.  Because the court has not considered the evidence in the reply appendixes, it overrules plaintiffs' objection without prejudice as moot.

for a 'business purpose,' and thus does not constitute an enterprise, unless the activities compete in the marketplace with ordinary commercial enterprises." (citing *Alamo Found.*, 471 U.S. at 296-97)).  But when a non-profit institution operates a *school*, its activities are "deemed to be activities performed for a business purpose," and therefore covered under the FLSA.  *See* 29 U.S.C. § 203(r)(2)(A) ("the activities performed by any person or persons . . . in connection with the operation of . . . a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such . . . school is operated for profit or not for profit) . . . shall be deemed to be activities performed for a business purpose."); *see also* 29 U.S.C. § 203(s)(1)(B).  In other words, the FLSA includes certain types of entities, including non-profit schools, in "enterprise" coverage, regardless of whether these entities perform activities for a "business purpose," and regardless of whether these entities compete in the marketplace with ordinary commercial enterprises.  *See, e.g., Nikolaeva v. Home Attendant Servs. of Hyde Park*, 2018 WL 6984837, at *3 (E.D.N.Y. Nov. 16, 2018), *rec. adopted*, 2019 WL 147721 (E.D.N.Y. Jan. 9, 2019).

Parnell and St. Augustine seek summary judgment on the ground that "St. Augustine is not an enterprise because there is no evidence that the school is engaged in any kind of business competition with ordinary commercial enterprises."  Ds. Reply 12.  But under the plain language of the FLSA, there is no requirement that, to be considered an "enterprise," a secondary school must compete with ordinary commercial enterprises to serve the general public.  Accordingly, the court denies Parnell and St. Augustine's motion for summary judgment on the ground that St. Augustine is not an enterprise because there is no evidence

that it operated a school engaged in any kind of business competition with ordinary commercial enterprises.

In denying summary judgment, the court notes that Parnell and St. Augustine neither argue nor seek summary judgment on the ground that the St. Augustine school does not qualify at all as a "secondary school" under the FLSA. *See* 29 U.S.C. § 203(w) (defining "Secondary School" as "a day or residential school which provides secondary education, as determined under State law."). In fact, based on the current state of the summary judgment record, the court questions whether St. Augustine school could be considered a "day" or a "residential" school. But this issue has not been adequately raised will need to await resolution at trial. *See Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.), ("It is error to grant summary judgment on a ground not raised." (citing *John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987))), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

IV

The court next considers Parnell and St. Augustine's motion for summary judgment on Artemio's FLSA retaliation claim.[7]

A

The FLSA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or

_____

[7]Only Artemio brings an FLSA retaliation claim.

instituted or caused to be instituted any proceeding under or related to this chapter[.]" 29 U.S.C. § 215(a)(3). Because Artemio relies on circumstantial evidence to support his FLSA retaliation claim, he must proceed under the familiar *McDonnell Douglas*[8] burden-shifting framework. *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) ("Although *McDonnell Douglas* was a Title VII case, the burden-shifting framework established therein has been adapted and applied to cases under the . . . FLSA.").

Artemio must first demonstrate a prima facie case for retaliation by showing that (1) he engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See, e.g., Blackburn v. Cypress Equities I, LP*, 2014 WL 4771765, at *8 (N.D. Tex. Sept. 25, 2014) (Fitzwater, C.J.) (citing *Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.)); *Hagan*, 529 F.3d at 624 (citation omitted). If Artemio establishes a prima facie case, the burden shifts to defendants to articulate a legitimate, nonretaliatory reason for the alleged retaliatory action taken. *Hagan*, 529 F.3d at 624; *Walker*, 2005 WL 2278080, at *9. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009). If defendants meet their production burden, the burden shifts back to Artemio to show that his engaging in conduct protected by the FLSA was the "but for cause" of the adverse employment decision. *See Kanida v. Gulf*

---

[8]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Coast Med. Personnel LP*, 363 F.3d 568, 580 (5th Cir. 2004) ("This court has repeatedly stated that in retaliation cases [under the FLSA] the employee must prove that the adverse employment action would not have occurred 'but for' plaintiff's protected activity." (citing cases)); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *Little v. Tech. Specialty Prods. LLC*, 2013 WL 5755333, at *4 (E.D. Tex. Oct. 23, 2013) (noting that Fifth Circuit has repeatedly required that plaintiff establish "but for" causation, which "is consistent with the Supreme Court's holding in *Nassar*, and, thus, the standard for FLSA retaliation cases was not altered by the *Nassar* decision.").

A plaintiff may establish "but for" causation by proving "by a preponderance of the evidence that the reasoning presented by the defendant[s] is a pretext for retaliation." *Smith v. Sw. Bell Tel. Co.*, 456 Fed. Appx. 489, 492 (5th Cir. 2012) (per curiam) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 584 (5th Cir. 2006)) (internal quotation marks omitted). A plaintiff can demonstrate pretext "by showing that the employer's proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citation and internal quotation marks omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

B

In support of Artemio's FLSA retaliation claim, he alleges that, on October 9, 2016, he requested payment of wages for the hours he worked from January 2, 2016 through September 2016, and that, in response, Parnell assaulted him "by way of threats and physical contact." 2d Am. Compl. ¶ 28. Parnell and St. Augustine move for summary judgment on the ground that Artemio did not engage in protected activity under the FLSA because he did not make a complaint concerning some violation of law, and on the ground that Artemio did not suffer an adverse employment action under the FLSA. In response, Artemio contends that his demand for wages when no wages had been paid is a "self-evident violation of the FLSA" and should be sufficient to amount to an informal complaint and thus protected activity, and that former employees are afforded at least the same amount of protection by the FLSA's anti-retaliation provisions as current employees. Ps. Br. 20.

C

Although this question is also a close one, after drawing all reasonable factual inferences in Artemio's favor, the court holds that a reasonable jury could find from the summary judgment evidence that Artemio engaged in protected activity under the FLSA when he approached Parnell on October 9, 2016 and requested payment for unpaid work he had performed.

In *Hagan* a Fifth Circuit panel held that an informal, internal complaint may constitute protected activity under 29 U.S.C. § 215(a)(3). *Hagan*, 529 F.3d at 626. Of course, "not all abstract grumblings or vague expressions of discontent are actionable as complaints." *Id.*

(citation and internal quotation marks omitted). An informal complaint must "concern some

violation of law." *Id.* And

> the "employer must have fair notice that an employee is making
> a complaint that could subject the employer to a later claim of
> retaliation" and the "complaint must be sufficiently clear and
> detailed for a reasonable employer to understand it, in light of
> both content and context, as an assertion of rights protected by
> the [FLSA] and a call for their protection."

*Starnes v. Wallace*, 849 F.3d 627, 632 (5th Cir. 2017) (quoting *Lasater v. Tex. A&M

Univ.-Commerce*, 495 Fed. Appx. 458, 461 (5th Cir. 2012) (per curiam)).

Artemio has introduced this pertinent evidence from his deposition testimony:

> I asked—I asked [Parnell] for the money from my schedule, for
> him to give me part of it. . . . I told him, I need something for
> the gas, for you to pay me part of the money that you owe me.
> And he said, I don't have money. He said, I'm not going to pay
> you anything. And he said, [g]et out of here . . . [and] I said,
> Ok, Father, thank you.

Ps. 4/3/19 App. at 39-40. Based on the summary judgment evidence,[9] including this

testimony, a reasonable jury could find that Artemio engaged in protected activity under the

FLSA when he essentially complained to Parnell, his alleged boss, that he had not been paid

any of the money he was owed from his work ("from [his] schedule"), he requested payment

of part of what he was owed because he needed something for gas, and Parnell understood

---

[9]"When this court denies rather than grants summary judgment, it typically does not
set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall.
Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing
*Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19,
2003) (Fitzwater, J.)).

the request and responded that he would not pay Artemio anything. That Artemio never specifically referred to a violation of law, complained that Parnell was acting illegally, or even suggested that he was legally entitled to be paid are facts that a jury may choose to weigh in defendants' favor in finding that Artemio's complaint was simply a form of unprotected grumbling or expression of discontent. Even so, a reasonable jury could also find that an employer such as Parnell would have understood, under the facts of this case, that Artemio, an unsophisticated manual laborer, was asserting that Parnell had promised to pay him for working, that Artemio had performed work, and that Artemio had not been paid at all. The court holds that this is sufficient to raise a genuine fact issue, even if the question is a close one. *See, e.g., Alvarez v. Amb-Trans Inc.*, 2012 WL 4103876, at *3 (W.D. Tex. Sept. 17, 2012) (holding that plaintiff's telling his manager he was not getting paid the full amount of overtime he was supposed to receive, and that amount of hours for which he was supposed to be paid were not accurate constituted protected activity under the FLSA); *Noack v. YMCA*, 2010 WL 11530762, at *9 (S.D. Tex. Mar. 1, 2010) ("Plaintiff spoke directly with [supervisor] about receiving overtime, and [supervisor] affirmatively responded that she would try to get an hour of overtime for Plaintiff. Because Plaintiff affirmatively and clearly made a complaint regarding his overtime to his supervisor who clearly understood his request, Plaintiff meets the first element of his retaliation claim."), *rec. adopted sub nom. Noack v. YMCA of the Greater Hous. Area*, 2010 WL 11530763 (S.D. Tex. Mar. 29, 2010), *aff'd sub nom. Noack v. YMCA of Greater Hous. Area*, 418 Fed. Appx. 347 (5th Cir. 2011).

Accordingly, to the extent Parnell and St. Augustine move for summary judgment on

Artemio's FLSA retaliation claim on the ground that Artemio cannot make a prima facie

showing of protected activity, the court denies the motion.

D

The court also denies Parnell and St. Augustine's motion for summary judgment on

Artemio's FLSA retaliation claim to the extent based on the contention that Artemio was not

defendants' employee when the alleged adverse employment action occurred.

In *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), the Supreme Court addressed

whether the term "employees," as used in Title VII, "includes former employees, such that

petitioner may bring suit against his former employer for postemployment actions allegedly

taken in retaliation for petitioner's having filed a charge with the Equal Employment

Opportunity Commission[.]"[10] *Id.* at 339. Beginning with the language of the statute itself,

the Court held that the word "employees," as used in Title VII, is "ambiguous as to whether

it excludes former employees." *Id.* at 341. The Court then engaged in a contextual analysis,

observing that "several sections of the statute plainly contemplate that former employees will

make use of the remedial mechanisms of Title VII." *Id.* at 345. It also noted that a restrictive

interpretation "would undermine the effectiveness of Title VII by allowing the threat of

postemployment retaliation to deter victims of discrimination from complaining to the

---

[10]The plaintiff in *Robinson* had filed a charge of discrimination with the EEOC after his termination. *Robinson*, 519 U.S. at 339. While his EEOC charge was pending, the plaintiff applied for a job with another company. *Id.* That company contacted the defendant, as plaintiff's former employer, for an employment reference, and the defendant allegedly retaliated against the plaintiff by giving a negative employment reference. *Id.*

EEOC, and would provide a perverse incentive for employers to fire employees who might bring Title VII claims." *Id.* at 346. The Court thus ordered reinstatement of the plaintiff's retaliation action, "[i]t being more consistent with the broader context of Title VII and the primary purpose of § [2000e-3(a)]," and "h[e]ld that former employees are included within § [2000e-3(a)]'s coverage." *Id.*

The FLSA's anti-retaliation provision is similar to the anti-retaliation provision in Title VII. Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a). Under the FLSA, it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Title VII and the FLSA both define the term "employee" as an "individual employed by an employer," without any temporal qualifier. *See* 42 U.S.C. § 2000e(f); 29 U.S.C. § 203(e). Based on these similarities and the reasoning in *Robinson*, several courts have applied *Robinson*'s expansive interpretation of the word "employee" in the FLSA context. *See, e.g., Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) ("The similar statutory language suggests that the Supreme Court's interpretation of 'employee' in *Robinson*—to include former as well as current employees—and definition of retaliatory acts in *Burlington Northern* similarly apply in the FLSA context."); *Green v. Sparta Veterinary Servs., LLC*, 2016 WL 10720466, at *3 (M.D. Tenn. Aug. 24, 2016) (holding in FLSA action that "a former employee can be subject

to an adverse action."); *Jian Zhong Li v. Oliver King Enters., Inc.*, 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015) ("[D]istrict courts in this Circuit have applied the Supreme Court's reasoning in *Robinson* to FLSA retaliation claims, finding that in some circumstances plaintiffs can bring retaliation claims against former employers for post-employment conduct."); *Seum v. McClure Staffing LLC*, 2012 WL 254146, at *6 (N.D. W. Va. Jan. 27, 2012) ("It is well-settled law that the protections of [29 U.S.C. § 215(a)(3)], and of all of the FLSA, extend not only to current employees, but to former employees as well. Therefore, the fact that the alleged retaliation occurred following the plaintiff's termination is of no consequence to his ability to recover under 29 U.S.C. § 215(a)(3)." (citations omitted)); *Phillips v. M.I. Quality Lawn Maint., Inc.*, 2010 WL 4237619, at *4 (S.D. Fla. Oct. 21, 2010) (agreeing with decisions holding that term "employee" in 29 U.S.C. § 215(a)(3) "must include former employees," and "reject[ing] Defendants' argument that the retaliation claims must be dismissed because Plaintiffs are former employees"). Although not binding, this court finds the reasoning in these cases to be persuasive. The court is particularly persuaded by *Darveau*, in which the court concluded that former employees should be entitled to FLSA protection, *inter alia*, because "they often need references from past employers, they may face retaliation from new employers who learn they have challenged the labor practices of previous employers, and they sometimes must return to past employers for a variety of reasons, putting them once more at risk of retaliation." *Darveau*, 515 F.3d at 343 (citing *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972)).

Parnell and St. Augustine contend that Artemio cannot establish his FLSA retaliation

claim because he was not an employee of defendants when the alleged adverse employment action occurred. In light of the persuasive authority discussed above, the court rejects this argument. And because Parnell and St. Augustine do not move for summary judgment on Artemio's FLSA retaliation claim on any other ground, the court denies their motion as it pertains to this claim.

## V

Parnell and St. Augustine request that the court dismiss plaintiffs' pendent state-law claims after granting summary judgment on their federal-law claims. Because the court has not dismissed all of plaintiffs' federal claims, it declines to dismiss their state-law claims on this basis.

## VI

The court now turns to Old Roman's motion for summary judgment. Old Roman contends that plaintiffs cannot recover against it based on their employment-related claims because no reasonable jury could find that plaintiffs had an employment relationship with Old Roman. It adopts the summary judgment motion of St. Augustine and Parnell, including their contention that "Plaintiffs' state law claims belong in state court." D. Old Roman Br. 8.

### A

#### 1

Under the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This court

applies the economic reality test when determining a party's status as an employer under the FLSA. *See, e.g., Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). Under the economic reality test, the court evaluates "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. at 355 (citation and internal quotation marks omitted). A party need not, however, establish each element in every case. *Id.* at 357. "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 251 (5th Cir. 2012) (citation omitted). Moreover, "[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc*., 867 F.2d 875, 877 (5th Cir. 1989) (per curiam), *modifying* 861 F.2d 450 (5th Cir. 1988).

2

Old Roman contends that there is no evidence that Artemio or Ema worked for Old Roman; that Old Roman, as an entity, exists on paper only and does not have bank accounts, hold church services, have a congregation, or provide services to the surrounding community; and that plaintiffs have admitted that their intention was to sue St. Augustine,

not Old Roman.[11]  Plaintiffs respond by citing evidence that they maintain contradicts Old

Roman's contention that it could not have been in an employment relationship with plaintiffs

because it has only ever existed on paper.  Plaintiffs have failed, however, to produce any

evidence, or even to argue, that they were *employed* by Old Roman during the relevant

period.  And although they cite the "economic reality" test, they make no effort to explain

why, under the elements of this test, an employment relationship existed between them and

Old Roman.  Accordingly, because plaintiffs have failed to create a genuine issue of material

fact on the question whether Old Roman employed them during the relevant time period, the

court grants Old Roman's motion for summary judgment on plaintiffs' FLSA-based claims

asserted against it.

B

The court also dismisses plaintiffs' state-law claims, to the extent they are asserted

against Old Roman, based on the contention (adopted from codefendants' motion) that the

state-law claims belong in state court.

Although this court can exercise supplemental jurisdiction over the state-law claims

under 28 U.S.C. § 1367(a), in this circuit "[t]he general rule is that a court should decline to

exercise jurisdiction over remaining state-law claims when all federal-law claims are

eliminated before trial."  *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595,

602 (5th Cir. 2009).  Having dismissed plaintiffs' federal-law claims against Old Roman, the

---

[11]As noted, *see supra* note 6, Old Roman filed a reply appendix without leave of court.
The court has not considered it in deciding Old Roman's motion.

court in its discretion declines to exercise supplemental jurisdiction over their state-law claims against this defendant. Accordingly, the court dismisses plaintiffs' state-law claims against Old Roman without prejudice.

*   *   *

Accordingly, the court grants in part and denies in part the motion for summary judgment of defendants St. Augustine and Parnell. The court grants Old Roman's motion for summary judgment and dismisses plaintiffs' federal-law claims with prejudice and their state-law claims without prejudice by judgment filed today.

**SO ORDERED**.

July 8, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE